[737 NYS2d 592]

In the Matter of GEORGE EDELSTEIN, an Attorney, Respondent. DEPARTMENTAL DISCIPLINARY COMMITTEE FOR THE FIRST JUDICIAL DEPARTMENT, Petitioner.

First Department, February 5, 2002

### APPEARANCES OF COUNSEL

*Naomi F. Goldstein* of counsel (*Thomas J. Cahill,* attorney), for petitioner.

*George Edelstein,* respondent pro se.

### OPINION OF THE COURT

Per Curiam.

Respondent, George Edelstein, was admitted to the practice of law in the State of New York by the First Judicial Department on February 1, 1988. At all times relevant to this proceeding, respondent has maintained an office for the practice of law within the First Judicial Department.

### A.

Crucial in this proceeding are the findings made against respondent by the Grievance Committee Panel of the Southern District of New York and, with respect to the sanction hearing, the Panel appointed by this Court. The federal court Panel found that respondent: (1) violated Code of Professional Responsibility DR 5-103 (b) (22 NYCRR 1200.22) by making nine loans totaling over $20,000 to a client, dating from January 1991 through February 1992; (2) violated DR 5-101 (a) (22 NYCRR 1200.20) by accepting employment again in November 1992 from the same client while said client was indebted to respondent; (3) violated DR 1-102 (a) (5) (22 NYCRR 1200.3) by engaging in conduct prejudicial to the administration of justice, specifically by conducting a private "sting" operation instead of reporting suspected government misconduct to the Department of Justice or to Judge Griesa; and (4) by acting intentionally to delay and impede the federal court Panel.

The State Hearing Panel found respondent George Edelstein unfit to practice law. The Panel found that: He lacks even the most basic understanding of the nature and function of law. He shows no remorse. He acknowledges no wrongdoing. He shows a cavalier and disrespectful attitude toward the law, professional ethics and the disciplinary process. He offers no witnesses or evidence in mitigation. He toyed with the Panel, failed to showup for the hearing and offered no valid excuse. He inappropriately brought a 10-year-old boy with him to the hearing on April 23, 2001. He gives the Panel no reason not to disbar him.

By decision and order dated October 21, 1999, the Southern District struck respondent's name from the roll of attorneys, pursuant to rule 1.5 (b) (5) of the Local Civil Rules of the United States District Courts for the Southern and Eastern Districts of New York. Respondent is in violation of the following statutes: DR 5-103 (b) which prevents a lawyer "[w]hile

representing a client * * * [to] advance or guarantee financial assistance to the client"; DR 5-101 (a) which prohibits a lawyer from "[accepting] employment if the exercise of professional judgment on behalf of the client will be or reasonably may be affected by the lawyer's own financial, business, property, or personal interests"; and DR 1-102 (a) (5) which prohibits a lawyer from engaging in "conduct that is prejudicial to the administration of justice."

On the basis of the Southern District's order, the United States Court of Appeals for the Second Circuit disbarred respondent pursuant to the court's rules for reciprocal discipline (Rules of US Ct App 2d Cir local rule 46 [f] [1]). Respondent did not appeal the Southern District Court's order. In April 2000, the District Court for the Eastern District initiated its own reciprocal proceeding, which is still pending.

By petition dated August 16, 2000, the Departmental Disciplinary Committee moved for an order pursuant to Judiciary Law § 90 (2) and for the reciprocal discipline provision of 22 NYCRR 603.3, disbarring respondent from the practice of law predicated on similar discipline issued by the United States District Court for the Southern District of New York and the United States Court of Appeals for the Second Circuit; or in the alternative, sanctioning respondent as this Court deemed appropriate.

In seeking an order pursuant to 22 NYCRR 603.3, the Committee asserted that respondent was precluded from raising any defense enumerated in 22 NYCRR 603.3 (c) because the procedure had been fair, the proof adequate and the acts for which respondent was disbarred constitute misconduct in this jurisdiction. In an unpublished order entered November 29, 2000, this Court granted the Committee's petition to the extent of finding that respondent had engaged in professional misconduct; barring respondent from asserting defenses enumerated in 22 NYCRR 603.3 (c); and, in a departure from its usual practice of deferring to the court in which the original disciplinary proceeding arose regarding sanction, remanding the matter to the Committee to designate a Hearing Panel to conduct a hearing and to issue a report and recommendation as to the appropriate sanction to be imposed.

Thereafter, by an unpublished order entered March 16, 2001, this Court denied in its entirety respondent's pro se motion of February 15, 2001 for an order clarifying the unpublished order entered November 29, 2000.

## B.

The facts are that for a period in 1991-1992 respondent, a court-appointed attorney, represented a criminal defendant who ultimately became a government confidential informant. Over the 13-month period from January 1991 through February 1992 (during respondent's first representation of this client) respondent made him nine separate loans totaling more than $20,000. Seven of the loans were made after the client had defaulted on his promise to pay the first two.

In early 1992, respondent withdrew from this representation. He resumed it in or about November 1992, at a time when the informant owed respondent over $20,000. In December 1992, while representing informant, respondent requested that the government pay the informant for the informant's cooperation so that the informant could pay his debt to respondent. In April 1993, respondent ceased representing the informant. Respondent then sued the informant to recover loans made during the January 1991 to February 1992 period, and on August 2, 1993 recovered a default judgment against the informant for over $20,000 plus interest.

In July 1994, respondent was engaged under the Criminal Justice Act to represent Bartolome Moya in the Southern District of New York in a major criminal case (murder, kidnapping and drugs in a RICO setting, and bail jumping). On July 20, 1994, Moya became a fugitive and a warrant for his arrest was issued. Following Moya's disappearance, respondent told the United States Attorney's office and the FBI that he did not know where Moya was.

In early August 1994, respondent met with the informant and told him that respondent would disclose Moya's whereabouts to him if he could arrange for the government to pay him a $30,000 reward for the information. Under respondent's proposal, informant would share the reward money with respondent and would not reveal that respondent was the source of the information. On or about August 4, 1994, respondent met again with the informant. At that meeting, the informant secretly taped part of the conversation, recording the respondent telling the informant that the respondent now wanted $100,000, in order to provide a "top dollar defense" of Moya whom respondent represented under the Criminal Justice Act.

Thereafter, without any help from respondent or the informant, Moya was apprehended in the Dominican Republic and returned to the Southern District of New York on October

24, 1994. On October 26, 1994, Assistant United States Attorney Cohen applied to Judge Griesa to disqualify respondent from representing Mr. Moya, stating what he had learned from an FBI agent in early August: That "an informant" had been contacted by respondent who had promised that respondent would furnish information about Moya's whereabouts to the informant who would then provide the information to the FBI and split the resulting reward money with respondent. Cohen then summarized the negotiations between the informant and respondent and submitted a copy of the transcript of the tape recording.

Cohen told Judge Griesa that members of his office had met with respondent the previous day, October 25, 1994, and had informed respondent of the proposed disqualification. At the court's invitation, respondent replied, claiming that the government had sent the informant to him offering money to disclose Moya's whereabouts. Respondent claimed that he "played along" until the informant displayed a gun, after which respondent called an FBI agent and told him that the informant (1) owed respondent money, (2) had shown respondent a gun, and (3) had tried to find out from respondent where Moya was ("trying to have me sell Moya").

In answer to Judge Griesa's questions about his objective in "playing along," respondent said: "to find out how far the government would go in trying to compromise me and trying to fish information out of me about my client, especially since I had told various people in the government that I had no idea where he was." Cohen denied that anybody in the government had asked the informant to communicate with respondent and pointed out that informant had no connection with the Moya case or the FBI agents running it.

On November 1, 1994, respondent wrote Judge Griesa a letter to "expand" on what he had said on October 26th. He volunteered that he had been telling the government for two years that informant owed him "a great deal of money." Respondent confirmed that he told the agent about the gun, "on August 9, I believe," and added that he had told the agent that the informant "had been trying to get me to tell where Moya was." Respondent also wrote that the informant had propositioned him; that respondent suspected that the informant "was acting at the government's request"; and that "Cohen was participating in the improper conduct." Consequently, he "played along * * * to see whether I could get information upon which I could responsibly base an accusation that the government was engaging in improper conduct."

After receiving respondent's November 1st letter and Cohen's November 9th reply, Judge Griesa disqualified respondent from continuing to represent Moya, and observed that:

> "But the important thing is that Mr. Edelstein has entered into discussions which raise questions about his own conduct, and therefore he now has a personal stake in this aspect of the case. And since he has this personal stake, he cannot represent his client further because an attorney for his client must be able to devote that attorney's energy and attention solely and exclusively for the benefit of his client, without regard to any personal questions about the conduct of the attorney of the kind involved here."

### C.

By knowingly getting himself disqualified from representing Moya in a major criminal case, respondent delayed the trial of that case. Respondent also caused the expenditure of an enormous amount of the time and resources of the federal court and the United States Attorney's office. As a former lawyer with the Department of Justice for 20 years, respondent was aware of the potential prejudice to the administration of justice if he, as a private person, undertook to investigate rather than to report possible official misconduct. And as the informant's former attorney, respondent had to be aware that his negotiations with the informant might compromise ongoing investigations in which the informant was active.

Respondent freely admitted most of the offenses for which his disbarment was proposed. Nevertheless, respondent advanced in his answer a "sting" defense: Respondent alleged that it was the informant who had contacted respondent and persisted in offering respondent a reward for the whereabouts of, Moya, despite respondent's disclaimer of knowledge. Respondent affirmatively declined to participate in the hearing, thereby willfully defaulting.

The Federal Hearing Panel found that respondent adopted a conscious strategy to avoid answering questions under oath regarding these matters and that respondent intended to impede and delay the resolution of his disbarment proceedings. The District Court found misconduct based upon, inter alia, respondent's admissions and other statements contained in his answer and in his letters to the Panel and court as well as in the record of proceedings at his disqualification hearing.

Respondent has not claimed that the procedure in the Federal District Court was a deprivation of due process. Respondent answered and then chose to avoid testifying under oath. Respondent's admitted conduct violated DR 5-103 (b), which prohibits a lawyer from advancing financial assistance to a client, as well as DR 5-101 (a), which prohibits a lawyer from accepting employment which reasonably may be affected by a lawyer's own financial interest. Respondent's poor financial condition increased the pressure on him to act against his client's interest. Respondent's justification for the loans was frivolous. On the private "sting" defense, it was not possible to ascertain who first approached who regarding the proposed disclosure of the client's location. It was, therefore, properly concluded that respondent engaged in conduct prejudicial to the administration of justice in violation of DR 1-102 (a) (5) when he failed to report contact with the informant to the Department of Justice or Judge Griesa. As he did in his defense to the financial misconduct charge, respondent raised only frivolous claims in his private "sting" defense. The acts which the District Court found to constitute misconduct sufficient for disbarment are misconduct in this jurisdiction.

### D.

The Departmental Disciplinary Committee now moves for an order confirming the Hearing Panel's May 30, 2001 determination: That, after a hearing, respondent be suspended for two years, with the added condition that he complete 30 hours of ethics course work before applying for readmission to the bar. As is manifestly apparent, the Departmental Disciplinary Committee and the Hearing Panel misunderstood our remand order to have limited respondent's potential sanction for his conduct to something less than disbarment. That misunderstanding provides the only basis for the Panel's recommendation of suspension rather than disbarment. By our remand order, this Court never intended to limit the Panel's consideration of disciplinary sanctions, including disbarment.

As found by the District Court, respondent's so called "sting" operation constituted conduct prejudicial to the administration of justice in violation of DR 1-102 (a) (5). The District Court found that, by engaging in the ruse involving his client and the informant, respondent interfered with the judicial process. Respondent knew, or should have known, that he would be disqualified from this serious criminal case, thereby creating more expense, delay, motions, hearings, appointment of new counsel

and the possibility of compromising the work of the informant. The nature and extent of respondent's misconduct warrants the disbarment sought by the Committee pursuant to 22 NYCRR 603.3 where respondent was found to have (1) engaged in the misconduct alleged in the federal disbarment proceeding, (2) adopted a strategy of delay and obstruction in that proceeding, (3) interposed frivolous claims and defenses in that proceeding, and (4) failed to submit mitigating evidence at the hearing before the Disciplinary Committee's Panel as to sanction. Respondent has clearly demonstrated his unfitness to practice law. Given the totality of the circumstances, disbarment is the only appropriate sanction (*Matter of Robb*, 287 AD2d 1; *Matter of Gadye*, 283 AD2d 1; *Matter of Horgan*, 168 AD2d 28). We agree with the finding of the Hearing Panel that respondent is "unfit to practice law" and that "he lacks even the most basic understanding of the nature and the function of law."

Accordingly, respondent should be disbarred pursuant to 22 NYCRR 603.4 (g), and his name stricken from the roll of attorneys and counselors-at-law in the State of New York, effective immediately.

WILLIAMS, J.P., SULLIVAN, ROSENBERGER, ELLERIN and BUCKLEY, JJ., concur.

Respondent disbarred, and his name stricken from the roll of attorneys and counselors-at-law in the State of New York, effective the date hereof.